Ex parte Larry Michael MYERS.

No. 67541.

Court of Criminal Appeals of Texas, En Banc.

June 17, 1981.

Rehearing Denied July 22, 1981.

Robert Huttash, State's Atty., Austin, for the State.

OPINION

CLINTON, Judge.

In this postconviction application for writ of habeas corpus pursuant to Article 11.07, V.A.C.C.P., petitioner is armed with federal and state jeopardy provisions in assailing a 1970 conviction for theft in Cause No. 75372 in the trial court. On an earlier day the Court entered an order directing the habeas court to hold an evidentiary hearing to allow petitioner an opportunity more fully to develop the facts concerning his allegation. In that order we described the posture of the matter, *viz*:

"Petitioner was placed on 10 years probation for theft over $50.00 in 1970. In 1975, his probation was revoked and his conviction upheld on appeal by this Court's per curiam opinion No. 52,730.

Petitioner alleges that as a jury was impaneled and sworn in 1968, prior to the State's 'withdrawing its announcement of ready,' his subsequent conviction in 1970 was barred by jeopardy. Specifically, petitioner asks this Court to hold the Supreme Court's decision in *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d [24] (1978), retroactive; an issue withheld by this Court in *McElwee v. State*, 589 S.W.2d 455 (Tex.Cr.App.1979)."

The record now before us consists of the transcript and transcription of the notes of the court reporter taken October 23 and 24, 1968 in Cause No. 75372 and the transcription of notes taken at the evidentiary hearing ordered by this Court. Concluding the latter hearing, the habeas court made the following findings of fact with respect to the trial that had been aborted October 24:

"[1]: On October 23rd, 1968, the jury was empaneled and sworn in this cause, that is number 75372. After the jury was sworn, the members of the jury were excused for the day and they left the courtroom. Petitioner was then arraigned on the charge out of the jury's presence, and he entered a plea of not guilty.

[2]: On October 24, 1968, the State was permitted to withdraw its announcement of ready in the case because of an unforeseen change in the expected testimony of the State's key witness, the victim. The jury was then discharged. The Petitioner did not expressly object to the discharge of the jury, nor did he expressly consent to its discharge.

[3]: Petitioner never plead to the indictment in front of the jury in 1968." [1] These findings are supported by the record,[2] and they form the backdrop for our determination of the principal issue in this proceeding.

▮ Today is the "another day" reserved in *McElwee v. State,* 589 S.W.2d 455 (Tex. Cr.App.1979) to express our view "whether *Crist* [*v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978)] is retroactive to those convictions which became final prior to the decision," *McElwee,* supra, at 460.[3]

The starting place is, of course, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); it overruled a thirty year landmark case [4] and found "that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment," 395 U.S. at 794, 89 S.Ct. at 2062. Application of that finding to North Carolina [5] the same day, moreover, left "no doubt of the 'retroactivity' of the Court's decision in *Benton v. Maryland,*" *Ashe v. Swenson,* 397 U.S. 436, 437 n.1, 90 S.Ct. 1189, 1191 n.1, 25 L.Ed.2d 469 (1970).

In overturning *Palko* the Supreme Court pointed out that in an increasing number of cases it "has rejected the notion that the Fourteenth Amendment applies to the States only a 'watered-down, subjective version of the individual guarantees of the Bill of Rights . . .', " quoting from *Malloy v. Hogan,* 378 U.S. 1, 10–11, 84 S.Ct. 1489, 1494–95, 12 L.Ed.2d 653 (1969), *Benton v. Maryland,* supra, 395 U.S. at 794, 89 S.Ct. at 2062. Rather, the Court pointed out its recent insistence that specific guarantees of the Bill of Rights be looked to in order " 'to determine whether a state criminal trial was conducted with due process of law,' *Washington v. Texas,* 388 U.S. 14, 18 [87 S.Ct. 1920, 1922, 18 L.Ed.2d 1019] (1967)," *ibid.* So, the Court concluded in this vein,

"... Once it is decided that a particular Bill of Rights guarantee is 'fundamental to the American scheme of justice,' *Dun-*

---

1. The court further found, and it is undisputed, that never thereafter—from the plea hearing in 1970 through the revocation hearing in 1975 to affirmance of his conviction by the Court—did petitioner suggest there was a jeopardy problem in his case. Nevertheless, it is settled in this Court that that kind of silence does not amount to waiver that bars a subsequently raised claim of double jeopardy. *Ex parte Jewel,* 535 S.W.2d 362 (Tex.Cr.App.1976); see *Ex parte Scelles,* 511 S.W.2d 300 (Tex.Cr.App. 1974). The State commendably notes this state of the law, and it expressly eschews a waiver argument.

2. We also note the following docket entries:
   Jury selected
   "10–23–68 Arraigned—PN.G—10–24–68—
   State Withdrew announcement of ready—"
   On October 24, 1968, the trial judge explained to the sitting jury, in pertinent part:

"... The State announced ready yesterday. One of their witnesses was not present at the time. When the witness did show up this morning he was not a witness as they thought. He was not willing or couldn't testify to the facts that they thought he could testify that the case would demand in the way of investigation.
   I am permitting the State to withdraw their announcement of ready in this case. * * * "

3. Earlier, in *Ex parte Reynolds,* 588 S.W.2d 900, 904 (Tex.Cr.App.1979), we also held the question open.

4. *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

5. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

can v. Louisiana, [391 U.S. 145] supra, at 149 [88 S.Ct. 1444, at 1447, 20 L.Ed.2d 491 (1968)] *the same constitutional standards apply against both the State and Federal Governments.*" [6]

Thus, the Court stated, "The validity of petitioner's larceny conviction must be judged, not by the watered-down standard enunciated in *Palko*, but by the Court's interpretations of the Fifth Amendment double jeopardy provision," *id.,* 395 U.S. at 796, 89 S.Ct. at 2063.

Now backtracking to *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963)—decided five years prior to the remarkably similar predicament in which the State here found itself.[7] Then, according to the Supreme Court in *Crist v. Bretz,* supra, 437 U.S. at 35, 98 S.Ct. at 2160, "the precise point at which jeopardy does attach in a jury trial might have been open to argument before this Court's decision in *Downum v. United States,*" supra; however, continued the Court:

"... There the second prosecution of a defendant whose first trial had ended just after the jury had been sworn and before any testimony had been taken. The Court thus necessarily pinpointed the stage in a jury trial when jeopardy attaches, and the *Downum* case has since been understood as the explicit authority for the proposition that jeopardy attaches when the jury is empaneled and sworn. [Citing authorities]." [8]

Accordingly, the Court in *Crist* easily found that "the defendant's valued right to have his trial completed by a particular tribunal" is now within the protection of the constitutional guarantee against double jeopardy, *id.,* 437 U.S. at 36, 98 S.Ct. at

2161. Similarly, it rejected the "view" of the State of Montana as to when jeopardy attaches—not until the first witness is sworn—as "impermissible," because:

"We agree with the Court of Appeals that the time when jeopardy attaches in a jury trial 'serves as the lynchpen for all double jeopardy jurisprudence.' * * * Today we explicitly hold what [*Illinois v.*] *Somerville* [410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)] assumed: The federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy."

Essentially what we are called on to do in these kinds of situations is to exercise our best judgment in predicting whether, if and when the Supreme Court of the United States determines to do so, it will decide that the rule of *Crist* is entitled to retroactive application in state criminal proceedings. Informed by such recent exercises as *Ex parte Reynolds,* 588 S.W.2d 900 (Tex.Cr. App.1979) cert. denied, 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980) and *Ex parte Mixon,* 583 S.W.2d 378 (Tex.Cr.App. 1979) cert. denied, 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980), we are satisfied that *Crist* is to be given retroactive application, for two reasons.

First, a formulation that combines *Downum's* closing the argument concerning attachment of jeopardy in a jury trial in 1963 with *Benton's* imposing retroactively the same constitutional standards against both State and Federal Governments in 1969, amounts to a recipe by the Supreme Court to be followed once a *Crist* factual situation arose. In this light *Crist* did not establish "new and overruling principles of law," *Mi-*

---

**6.** All emphasis is added throughout by the writer of this opinion unless otherwise indicated.

**7.** In *Downum* when the case was called for trial both sides announced ready and a jury was selected and sworn, only for the Government to learn that a principal witness was absent; before any testimony was taken, however, the jury was discharged.

**8.** Such was seen to be the meaning of jeopardy by Mr. Cooley in writing that with respect to an

accused a jury "has been charged with his deliverance ... when they have been impaneled and sworn," Cooley's Const. Lim. (15th Ed.) 404. Ironically, this Court discovered in *McElwee v. State,* supra, at 458, that a similar rule obtained in Texas, see *Powell v. State,* 17 Tex.App. 345 (1884), until conventional wisdom accepted the notion that additionally the plea of the accused to the indictment must be heard, see *McElwee,* at 458–459, and n.4.

zell v. Attorney General of the State of New York, 586 F.2d 942, 946 (CA 2, 1978), cert. denied, 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979).

Secondly, there is the significant difference enunciated in *Robinson v. Neil*, 409 U.S. 505, 508–509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973) between the relative values of the guarantee against double jeopardy and procedural guarantees. As this Court perceived it in *Ex parte Reynolds*, supra, at 903, jeopardy decisions are "squarely directed to the prevention of the second trial's taking place at all," rather than to prescribe procedural rules that govern the conduct of a trial. Just as the decision in *Crist* mandated that Montana not subject Bretz and Cline to a retrial, so it prevents a second state trial of any accused similarly situated.

We hold that *Crist* is retroactive to those convictions which became final prior to the decision by the Supreme Court. We further find the circumstances that troubled the prosecuting attorneys in the case at bar do not amount to "manifest necessity" for a retrial. *Downum*, supra; see *Hipple v. State*, 80 Tex.Cr.R. 531, 191 S.W. 1150 (1917).

Accordingly, the writ is granted, the conviction in Cause No. 75372 is vacated and set aside and the indictment in that cause is dismissed. Therefore, petitioner is released from custody and every manner of restraint in his personal liberty as a consequence of the conviction. The Clerk of this Court is directed to forward a copy of this opinion to the Texas Department of Corrections.

It is so ordered.

ONION, P. J., and DALLY and McCORMICK, JJ., concur in result.