**Walter VON BURLESON,
Petitioner-Appellee,**

v.

**W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellant.**

**No. 81–1401.**

United States Court of Appeals,
Fifth Circuit.

Jan. 22, 1982.

Douglas M. Becker, Asst. Atty. Gen., Austin, Tex., respondent-appellant.

Robert G. Clark (Court-appointed), Abilene, Tex., for petitioner-appellee.

Before GARZA and RANDALL, Circuit Judges *.

RANDALL, Circuit Judge:

All parties agree that the only question for determination in this case is whether the principle announced in *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978)—that the federal rule that jeopardy attaches when the jury is impaneled and sworn is an integral part of the fifth amendment guarantee against double jeopardy and applies to the states through the fourteenth amendment—is retroactive. We hold that it is, and we affirm the judgment of the district court granting the writ.

The facts pertinent to this petition for habeas relief under 28 U.S.C. § 2254 are undisputed. Walter Von Burleson was originally indicted for burglary in Cause No. C–71–2216–NI (the "first indictment") on March 22, 1971. Beginning on September 15, 1971, he was tried by a jury. The jury, however, became deadlocked and, with the consent of both Burleson and the State, the trial court ordered Burleson to stand trial on a subsequent date.

---

* Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision.

The case is being decided by a quorum. 28 U.S.C. 46(d).

On March 27, 1972, a bill of indictment, titled Cause No. C–72–2890–JI (the "second indictment"), was returned against Burleson alleging the same offense of burglary but containing the allegation, for enhancement purposes, that he had been convicted of two prior felony offenses. On June 7, 1972, after the second indictment had been returned, Burleson again appeared for trial pursuant to the first indictment. The docket entries of the trial court reflect that a petit jury had been selected and sworn, at which point the State advised the court that the prosecution should have proceeded on the second indictment and, on motion of the District Attorney, the first indictment was dismissed.

Subsequently, on October 17, 1972, Burleson was brought to trial, convicted under the second indictment and given a mandatory term of life imprisonment because of the two prior convictions alleged in the second indictment. See Tex.Pen.Code Ann. § 12.-42(d) (Vernon 1974).

After an unsuccessful direct appeal, he filed several petitions for writs of habeas corpus in the Texas courts alleging various trial errors. The petitions were denied, at first on the merits and later because of "abuse of the writ." Burleson did not present his double jeopardy claim in his first few petitions, and when, after *Crist*, he made the argument which he advances today, the Texas Court of Criminal Appeals denied habeas relief because of abuse of the writ, never reaching the merits of Burleson's double jeopardy argument. Burleson, after fully exhausting his state remedies, then petitioned for federal habeas relief, alleging that he had been unconstitutionally placed twice in jeopardy by dismissal of the first indictment after a jury had been impaneled and sworn and the impaneling of a second jury, trial, and conviction of the charges contained in the second indictment. The State recognized that if the first indictment had been dismissed subsequent to the

Supreme Court's 1978 decision in *Crist*, issuance of the writ would be mandated by that decision. It argues, however, that Texas law prior to *Crist*, and in effect at the time of Burleson's conviction, provided for attachment of jeopardy only after the defendant entered a plea to the indictment after the jury had been impaneled and sworn and was thus materially different from the mandate of *Crist*. The State asserts that the *Crist* ruling should not retroactively apply a different attachment of double jeopardy principle to nullify Burleson's conviction.

The district court found that the *Crist* decision should be applied retroactively to Burleson's conviction and ordered that the writ be granted.

In our attempt to determine whether *Crist* should be applied retroactively, *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), provides some guidance to us. In *Robinson*, the Court held retroactive the proscription against prosecution for the same crime in municipal court and again in state court. Such prosecution had previously been declared violative of the double jeopardy clause in *Waller v. Florida*, 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972). Thus, *Waller* applied to Robinson's conviction which occurred prior to the *Waller* decision. The Court indicated that, at least in some double jeopardy cases, the factors to determine retroactivity of procedural constitutional rulings set forth in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), are not necessarily appropriate when determining retroactivity of the double jeopardy clause. 409 U.S. at 508, 93 S.Ct. at 877. The Court, however, without setting forth an explicit analysis of retroactivity in the double jeopardy context, then proceeded to consider, at least to some degree, the *Linkletter* element of reliance by the state on procedures newly found to be constitutionally defective.[1] The Court stated:

---

1. The State misinterprets the degree to which reliance was considered in *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973). As we explained in *Bullard v. Estelle*,

665 F.2d 1347 (5th Cir. 1981), *Robinson* did not call for an increased *emphasis* on "good faith reliance" by the State on an unconstitutional rule. While the Court, in *Robinson*, noted reli-

The element of reliance embodied in the *Linkletter* analysis will not be wholly absent in the case of constitutional decisions not related to trial procedure. . . .

409 U.S. at 509, 93 S.Ct. at 878.

The Court evaluated reliance by the State of Florida on previous, and now, unconstitutional lower court rulings prior to *Waller*, finding that reliance by the state

on lower court decisions . . . was a good deal more dubious than the justification for reliance that has been given weight in our *Linkletter* line of cases. We intimate no view as to what weight should be accorded to reliance . . . in determining retroactivity of a nonprocedural constitutional decision such as *Waller*.

409 U.S. at 510–11, 93 S.Ct. at 878–79.

*Robinson* then, while indicating that double jeopardy rulings are not susceptible to the *Linkletter* analysis, 409 U.S. at 508, 93 S.Ct. at 877, continued to consider, to at least some degree, justifiability of reliance, finding the state's reliance unjustified.

After *Robinson*, the Court further amplified the element of reliance, stating:

[W]e will give controlling significance to the measure of reliance and the impact on the administration of justice only when the purpose of the rule in question [does] not clearly favor either retroactivity or prospectivity.

*Brown v. Louisiana*, 447 U.S. 323, 328, 100 S.Ct. 2214, 2220, 65 L.Ed.2d 159 (1979) (citations omitted).

With the method used by the Court in *Robinson* and its latest analysis of reliance in *Brown*, we now examine the specific ruling in *Crist* to determine if it should be applied retroactively, finding that *Crist* itself, when read in the light of *Robinson* and

*Brown*, answers our question clearly and succinctly:

We agree with the Court of Appeals that the time when jeopardy attaches in a jury trial 'serves as the lynchpen for all double jeopardy jurisprudence.' . . . . Today we explicitly hold what [*Illinois v.*] *Somerville* [410 U.S., 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973),] assumed: The federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy.

437 U.S. at 36, 98 S.Ct. at 2161 (emphasis added).

[T]he federal rule as to when jeopardy attaches in a jury trial is not only a settled part of federal constitutional law. It is a rule that both reflects and protects the defendant's interest in retaining a chosen jury. *We cannot hold that this rule, so grounded, is only at the periphery of double jeopardy concerns.*

437 U.S. at 37–38, 98 S.Ct. at 2161–62 (emphasis added). We further note the Court's conclusion that this principle should have been obvious before the *Crist* decision:

Although it has thus long been established that jeopardy may attach in a criminal trial that ends inconclusively, the precise point at which jeopardy does attach in a jury trial might have been open to argument before this Court's decision in *Downum v. United States*, 372 U.S. 734 [83 S.Ct. 1033, 10 L.Ed.2d 100] [1963]. There the Court held that the Double Jeopardy Clause prevented a second prosecution of a defendant whose first trial had ended just after the jury had been sworn and before any testimony had been taken. The Court thus necessarily pinpointed the stage in a jury trial when

ance in its statement that "[t]he element of reliance embodied in the *Linkletter* analysis will not be *wholly absent* in the case of constitutional decisions not related to trial procedure," 409 U.S. at 509, 93 S.Ct. at 878 (emphasis added), it did not indicate an increased emphasis on the reliance prong of *Linkletter*. Further, assuming that reliance on an unconstitutional rule is to be considered at all after *Robinson* when determining retroactivity, the Court has stated that reliance will be considered only when the purpose of the rule does not clearly favor retroac-

tivity or prospectivity. *Brown v. Louisiana*, 447 U.S. 323, 328, 100 S.Ct. 2214, 2220, 65 L.Ed.2d 159 (1979).

We once again explain to the State that *Robinson*, as an explicit ruling on the retroactivity of a double jeopardy principle, and recent cases such as *Brown* that set forth an emphasis on reliance only in narrow circumstances in a procedural ruling, do not support the State's position that we should emphasize reliance above other considerations.

jeopardy attaches, and *the Downum case has since been understood as explicit authority for the proposition that jeopardy attaches when the jury is empaneled and sworn.* See *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 [97 S.Ct. 1349, 1353, 51 L.Ed.2d 642]; *Serfass v. United States*, 420 U.S., [377] at 388 [95 S.Ct. 1055 at 1062, 43 L.Ed.2d 265].

437 U.S. at 38, 98 S.Ct. at 2162 (emphasis added).

Thus *Crist* establishes that (1) the time of attachment is critical in double jeopardy jurisprudence, (2) the time of attachment protects the defendant's substantial interest in a chosen jury,[2] and (3) the State should have been aware of this double jeopardy principle for several years prior to Burleson's indictment.

▪ From our analysis of *Crist*, in light of *Robinson* and *Brown*, we find that the purpose of the attachment of jeopardy rule, to protect the defendant's interest in a chosen jury, militates strongly toward retroactivity. Thus, any other considerations such as reliance are, after *Brown*, questionable. To the extent that reliance is a consideration, we find, using the same method utilized by the Court in *Robinson*, that the State's claim is unpersuasive. The State claims that it relied in good faith on the pre-*Crist* law as to when jeopardy attaches in dismissing the original indictment and then retrying Burleson because, at the time of Burleson's conviction, jeopardy did not

attach, as the Texas courts construed the double jeopardy clause, until the defendant had pled before the jury. *Lockridge v. State*, 522 S.W.2d 526 (Tex.Cr.App.1975). We recognize that prior to the decision of the Texas Court of Criminal Appeals in *Ex Parte Myers*, 618 S.W.2d 365 (Tex.Cr.App. 1981), to the effect that *Crist* applied retroactively to overrule *Lockridge, Lockridge* was the law in Texas. We find, however, that according to *Crist*, the State should have been forewarned that the rule that jeopardy attaches when the jury was sworn was applicable to Burleson's case. 437 U.S. at 38, 98 S.Ct. at 2162. In 1963, the Supreme Court determined, in *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), that jeopardy attached in federal proceedings when the jury was sworn. In 1969 the double jeopardy clause was, for the first time, made applicable to the states through the fourteenth amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). As the State itself admits, "those federal holdings of constitutional magnitude" were, after *Benton*, clearly applicable to the states, and as the Court itself has clearly set forth in *Crist*, its holding of the time of attachment of jeopardy is of constitutional magnitude. 437 U.S. at 35–38, 98 S.Ct. at 2160–62.

Thus after *Downum* in 1963 and *Benton* in 1969, any reliance claim by the State is speculative and, in the face of the impor-

**2.** The State alleges that the error by the State when Burleson was indicted, the jury sworn, the indictment dismissed and a second trial held under a second indictment was a procedural rather than a substantive error. We find this argument frivolous. In both *Crist* and *Robinson* the substantial nature of the double jeopardy right was clearly articulated and the integral nature of the time of attachment of that right, i.e., when the jury is sworn, was unquestionably established. For the State to claim that its action which placed Burleson in double jeopardy was a mere procedural error flies in the face of our double jeopardy jurisprudence.

The State also claims that the federal rule has little, if any, historical significance, citing the dissenting opinion of Justice Powell in *Crist, supra* 437 U.S. at 40–47, 98 S.Ct. at 2163–2166. We refer the State to Justice Stewart's majority opinion, *id.* at 36 and n.12, 98

S.Ct. at 2161 and n.12, for a discussion of the historic origins of the rule held retroactive here today. We will not engage in an irrelevant discussion of whether there is any historical precedent for the rule because

[r]egardless of its historic origin, however, the defendant's "valued right to have his trial completed by a particular tribunal" is now within the protection of the constitutional guarantee against double jeopardy, since it is that "right" that lies at the foundation of the federal rule that jeopardy attaches when the jury is empaneled and sworn. *United States v. Martin Linen Supply Co., supra; Serfass v. United States, supra*, at 388, 95 S.Ct. at 1062; *Illinois v. Somerville*, 410 U.S., at 467, 93 S.Ct. at 1072; *United States v. Jorn*, 400 U.S. 470, 478–480, 484–485, 91 S.Ct. 547, 553–54, 556–57, 27 L.Ed.2d 543 (plurality opinion).

437 U.S. at 36, 98 S.Ct. at 2161.

tant constitutional right to be protected, unjustified.[3]

Finally, the State claims that it would be unfairly prejudiced by retroactive application of *Crist* because it would be unable to prosecute Burleson for his theft crime. The State claims that Burleson, an alleged habitual offender, would "unfairly" go free.[4] While we recognize that Burleson will not be prosecuted for this crime, we find that the question we must ask is whether Burleson can be denied his substantial right to be free from being placed twice in jeopardy for the same offense. We find he cannot.

AFFIRMED.

---

**3.** The State urges us to find persuasive *Jackson v. Justices of the Superior Court of Massachusetts*, 549 F.2d 215 (1st Cir.), *cert. denied*, 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 370 (1977), and *United States v. Rumpf*, 576 F.2d 818 (10th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978), which held certain double jeopardy decisions nonretroactive. Neither of these cases dealt with the *Crist* type of double jeopardy decision. To the contrary, we find the two decisions where *Crist* was determined to be retroactive to be more closely on point. *Mizell v. Attorney General of New York*, 586 F.2d 942 (2nd Cir. 1978); *Ex Parte Myers*, 618 S.W.2d 365 (Tex.Cr.App.1981). As the Court of Appeals for the Second Circuit stated in *Mizell*:

It is evident that the Supreme Court in *Crist* considered that the rule which was formulated by *Downum* in 1963 was made applicable to the states by *Benton* in 1969 and was not simply a mechanical or arbitrary rule of convenience.
586 F.2d at 946.

**4.** The State additionally argues several hypothetical circumstances that could have occurred in Burleson's case. For example, it argues that if the prosecutor had dismissed the indictment a few minutes earlier without the jury having been impaneled, there would have been no double jeopardy problem. The State claims then that this "matter of moments" is insignificant. This argument ignores the Supreme Court's determination in *Crist* that the swearing of the jury is a significant moment with historical underpinnings in double jeopardy law. 437 U.S. at 36 and n.12, 98 S.Ct. at 2161 and n.12.