**Kevin K. CASEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–91–0041–CR.**

Court of Appeals of Texas, Amarillo.

March 23, 1992.

---

Phil Black, Borger, for appellant.

Michael D. Milner, County Atty., Borger, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

BOYD, Justice.

Appellant Kevin K. Casey brings this appeal from his conviction of driving while intoxicated. The trial court assessed punishment of a $300 fine and 60 days jail confinement. In one point of error, appellant contends that the trial court erred in failing to grant appellant's motion for dismissal based on double jeopardy. We affirm the judgment of the trial court.

Appellant alleges he had previously been convicted in the Borger Municipal Court of the offense of driving on the wrong side of the road, and, to support the instant charge, the State introduced and relied upon evidence of the conduct underlying the prior conviction, thereby giving rise to his claim of double jeopardy.

Generally, to raise a double jeopardy claim, the defendant must file a sworn special plea presenting that issue at the time of trial. Tex.Code Crim.Proc.Ann. arts. 27.05, 27.06 (Vernon 1989). Appellant failed to present such a verified special plea, but waited until closing argument during the guilt/innocence stage to raise the issue by oral motion.

■ Ordinarily, when a defendant fails to raise a double jeopardy claim by filing the requisite verified special plea, no error is presented to the trial court or preserved for appellate review. *E.g., Ex parte Murphy,* 669 S.W.2d 320, 322 (Tex.Crim.App. 1983), *cert. denied,* 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984); *Nash v. State,* 467 S.W.2d 414, 416 (Tex.Crim.App.1971); *Dedmon v. State,* 478 S.W.2d 486, 489 (Tex.Crim.App.1972); *Lavan v. State,* 363 S.W.2d 139, 141 (Tex.Crim.App.1962).

■ However, in the seminal case of *Shaffer v. State,* 477 S.W.2d 873, 875 (Tex. Crim.App.1971), the Court articulated an exception to that rule. In the words of the Court, it applies in those instances "where the trial court either knows or should know of the former proceedings, such as in those cases where the former jeopardy arose in the same case." *Id.*[1] Additionally, in the recent case of *State v. Torres,* 805 S.W.2d 418, 422 (Tex.Crim.App.1991) (citing *Ex parte Jewel,* 535 S.W.2d at 365), the Court again explicated, "[W]here a plea of jeopardy is before the same court and judge, as in the case at bar, statutory requirements concerning the plea are relaxed."

We do note that in *Ex parte Myers,* 618 S.W.2d 365 (Tex.Crim.App.1981), *cert. denied,* 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981), the Court held double jeopardy was not waived by appellant's failure to timely raise the issue, and in *Rivera v. State,* 716 S.W.2d 68 (Tex.App.— Dallas 1986, pet. ref'd), the Court reviewed the question of double jeopardy as unassigned error. However, upon examination, the holdings in both those cases are consistent with, and fall within the above exception to the general rule.

In the *Myers* case, the second conviction was apparently in the same court, and possibly before the same judge, in which the first charge was brought. Additionally, the second charge was brought under the same cause number as the first. Referring to Myers' failure to raise the double jeopardy question earlier, the Court commented, "[T]hat kind of silence does not amount to waiver that bars a subsequently raised claim of double jeopardy." *Ex parte Myers,* 618 S.W.2d at 367 n. 1. As authority for that proposition, the Court cited *Ex parte Jewel* and *Ex parte Scelles,* the citations and references to which are noted in our footnote # 1. *Id.* Those cited cases are factually consistent with the *Shaffer* case. In the *Rivera* case, the second conviction occurred after the granting of a new trial from the first conviction and was before the same court and before the same judge as the prior conviction. *Rivera v. State,* 716 S.W.2d 68.

■ It is also established that the fact that a right is of constitutional dimension will not, in itself, always justify the disregarding of state procedural rules with the test being whether the enforcement of the rule serves a legitimate state interest, or, whether under the circumstances of the particular case, the disregard of the rules did not affect that state interest. *Berrios– Torres v. State,* 802 S.W.2d 91, 96 (Tex. App.—Austin 1990, no pet.) (citing *Shaffer v. State,* 477 S.W.2d 873, 875–76 (Tex.Crim.

---

1. Accord, *e.g., Ex parte Jewel,* 535 S.W.2d 362, 365 (Tex.Crim.App.1976); *Ex parte Evans,* 530 S.W.2d 589 (Tex.Crim.App.1975); *Ex parte Scelles,* 511 S.W.2d 300, 301 (Tex.Crim.App. 1974); *Muncy v. State,* 505 S.W.2d 925 (Tex. Crim.App.1974) (when the second charged offense is before the same court and the same judge as the first charged offense); *Ex parte Pleasant,* 577 S.W.2d 256 (Tex.Crim.App.1979) (second offense before the same judge, on the same date, and arose out of the same transaction); *Jones v. State,* 502 S.W.2d 164 (Tex.Crim. App.1973); *Ellis v. State,* 502 S.W.2d 146, 147 (Tex.Crim.App.1973) (when the two offenses are in the same court, on the same day, before the same judge, and are based on the same evi-

dence); *Duckett v. State,* 454 S.W.2d 755, 758 n. 2 (Tex.Crim.App.1970) (the offenses are in the same court, on the same day, based on the same evidence reflecting the same act); *Torrez Diaz v. State,* 762 S.W.2d 701 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd) (both offenses in the same court, at the same time and arose from the same transaction).

We note that in footnote # 2 of *Duckett* at page 758 "it appears the word 'not' was somehow excluded. It would seem the sentence should read, 'Under such circumstances, it would appear that a special plea would *not* be required.'" *Ex parte Scelles,* 511 S.W.2d at 301 n. 3; accord *Ex parte Evans,* 530 S.W.2d at 591 n. 1; *Shaffer v. State,* 477 S.W.2d at 875–76 n. 2.

App.1971)).[2]

According to appellant's testimony, the prior conviction occurred in a municipal court. The present conviction occurred in a county court. There is nothing in the record indicating the court knew or should have known of any alleged prior conviction. Therefore, appellant is not within the exception to the general rule requiring the filing of a verified special plea.

In *Shaffer*, in addressing the procedural requirement that a special plea of double jeopardy be verified, the Court commented, "Such requirement seeks to prevent the raising of such a defense in bad faith, and the resulting delay of hearing evidence on a plea without merit." *Shaffer v. State*, 477 S.W.2d at 876 n. 3. The need to protect these interests is further pronounced when a plea is not even filed.

Case law also requires the defendant to go forth with evidence in support of an allegation of former jeopardy. That procedural requirement serves a legitimate state interest as the trial court ordinarily has no way of knowing whether the allegations are true. The requirement that the plea and evidence be presented *prior to trial* serves a legitimate state interest as it allows the State to investigate and present evidence which might contradict the claim of double jeopardy, and precludes the waste of holding an unneeded trial if the claim is true. *See Shaffer v. State*, 477 S.W.2d at 875, 876.

Appellant asserts that it was impossible for him to earlier raise a special plea because he did not know what evidence would be presented by the State. Under the circumstances of this case, we disagree with that premise. Appellant should have reasonably anticipated the introduction of the evidence concerning the conduct for which

appellant was previously convicted. As we have noted above, appellant's previous conviction was for driving on the wrong side of the road and the present prosecution arises out of the same transaction as the conduct underlying the prior conviction.

Additionally, appellant not only should have reasonably anticipated that the State would introduce evidence of appellant's alleged driving on the wrong side of the road in order to convict appellant for DWI, but, indeed did so. The record reveals that upon asserting his claim of double jeopardy, appellant had prepared for the trial court a copy of the case upon which he based that claim. During the discussion which followed the presentation of appellant's motion, in relation to why he had not filed an earlier motion, appellant's trial counsel stated, "There is nothing that says that I have to tell them what *my strategy is going be* ..."

The record also reveals that the trial counsel's justification for not complying with the statutory procedural rules was to prevent the State from avoiding the problem. In the course of the discussion, he commented: "... no, I haven't told them about it. If I told them about it, they would have—I am not under any obligation to tell them about it. They would have avoided the problem." "Frankly, this is the kind of thing that if I file motions on before the trial, the State would know what I was up to and they could avoid the problem."

Other than raising his claim of prior jeopardy during closing argument, appellant failed to present any evidence of a previous conviction at the guilt/innocence stage of the trial. The only evidence he ever produced concerning the prior conviction was

**2.** We note the statement made in *Jones v. State*, 586 S.W.2d 542, 544 (Tex.Crim.App.1979), "Regardless of the proceedings below, a plea of former jeopardy may be raised for the first time in this Court." We find this statement to be inconsistent with the large body of caselaw holding that double jeopardy may not be raised on appeal if the proper procedural requirements are not met at the trial court level. *E.g., Ex parte Murphy*, 669 S.W.2d 320, 322 (Tex.Crim. App.1983).

In support of the above quoted statement, *Jones* cites to *Ex parte Evans*, 530 S.W.2d 589, and *Muncy v. State*, 505 S.W.2d 925. We do not agree that *Ex parte Evans* and *Muncy* stand for the broad proposition stated in *Jones*. As noted in footnote # 1 of this opinion, *Ex parte Evans* and *Muncy* were factually within the exception to the requirement of filing a special plea, enunciated in *Shaffer*.

during his testimony at the punishment stage of the trial. No court record concerning the prior conviction was ever presented.

The State has a valid interest in avoiding problems which would interfere with its lawful prosecution of alleged crimes and in being able to research and prepare responses to claims of double jeopardy. It also has a valid interest in being able to investigate and present any evidence which might exist that supports or controverts claims of double jeopardy in order that prosecutions be dismissed and that valid prosecutions continue when it is proper to do so. It has a valid interest in conserving valuable judicial time by not going through unnecessary trials when a double jeopardy claim is valid.

■ Although these may not be all of the legitimate state interests which would have been served by the special plea requirement in the instant case, it is a sufficient listing to indicate that the disregard of the procedural rule did affect state interests. Thus, there is no valid reason not to apply the general rule and hold that appellant's failure to raise his contention of double jeopardy by timely filing a verified special plea failed to preserve that question for appellate review.[3]

■ Furthermore, even assuming the question of double jeopardy was preserved for our review, we find no error in the trial court's overruling of appellant's motion.

In making his claim, appellant primarily relies upon *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), for his assertion that the present prosecution is barred. In that case, the Court stated:

We hold that the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

*Id.* 495 U.S. at 510, 110 S.Ct. at 2087, 109 L.Ed.2d at 557.

In the recent case of *Ex parte Ramos,* 806 S.W.2d 845 (Tex.Crim.App.1991), the Court had occasion to explore the ramifications of the *Grady* decision. In that case, the Court pointed out that the so-called "Blockburger Test"[4] is still the starting point in double jeopardy analyses. It explicated that doctrine does not prohibit successive prosecutions for the same criminal act or transaction under two criminal statutes whenever one statute requires proof of an additional fact not required by the other statute. The *Ramos* Court suggested the method of determining the question was to analyze the component elements of the separate offenses, and, if each of the offenses requires proof of a different element, there is no double jeopardy bar. *Id.* at 847.

In conducting that analysis, the Court outlined a tripartite test. That test requires us to look at the underlying conduct in question to determine whether (1) there is conduct constituting an offense, *i.e.,* criminal conduct; (2) the defendant has already been prosecuted for this offense; and (3) this "criminal conduct" will be used to establish an *essential element* of the offense charged in the subsequent prosecution. It concluded this explication with the conclusion that only if the conduct met all three parts of the test would the subse-

3. We note that a writ of habeas corpus, instead of a special plea, is sufficient to first raise the issue of double jeopardy when the interest served by the special plea is not served by its enforcement. When the trial court either knows or should know of the former proceeding or when the writ of habeas corpus was sought pretrial are examples of such situations. *E.g., see Ex parte Pleasant,* 577 S.W.2d 256 (Tex.Crim. App.1979) (second prosecution before the same trial judge, on the same date and arising out of the same transaction); *Hubbard v. State,* 798 S.W.2d 798 (Tex.Crim.App.1990) (second prosecution before the same court subsequent to mis-

trial on first prosecution); *Ex parte Stowe,* 744 S.W.2d 615 (Tex.App.—Houston [1st Dist.] 1987, no pet.) (second prosecution before the same court on retrial and writ sought prior to retrial); *Ex parte Robinson,* 641 S.W.2d 552 (Tex.Crim. App.1982) (pretrial application for writ); *Stephens v. State,* 806 S.W.2d 812 (Tex.Crim.App. 1990) (pretrial application for writ); *Ex parte Rathmell,* 717 S.W.2d 33 (Tex.Crim.App.1986) (pretrial application for writ).

4. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

quent prosecution be barred and that in making the inquiry, the focus is on the conduct itself, not how the State proves the conduct. *Id.* at 847.

The thrust of appellant's argument is that the present prosecution for driving while intoxicated is barred because the State proved the conduct of driving on the wrong side of the road (for which appellant was previously convicted) in order to establish the elements of driving and intoxication.

However, in the present case, there was ample evidence to support appellant's conviction without reliance on the evidence pertaining to driving on the wrong side of the road. Evidence was presented that appellant had been speeding, slid past a stop sign and through an intersection, appeared to be trying to place an opened can of beer under the front seat of his vehicle, and there was spilled beer in the vehicle. The arresting officer testified that appellant had staggered while walking, smelled strongly of alcohol, appeared confused, and had slurred speech. Furthermore, the officer testified that appellant had performed poorly on sobriety tests and had stated he had consumed three beers. The officer stated and the parties stipulated that appellant had tested .14 on an Intoxilyser test.

Parenthetically, the U.S. Supreme Court's opinion in *Grady* was based upon *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). 495 U.S. at 510, 515–16, 520, 110 S.Ct. at 2087, 2090, 2093, 109 L.Ed.2d at 557, 560–61, 564. The Court quoted from *Vitale:*

> '[I]t may be that to sustain its manslaughter case the State may find it *necessary* to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a *necessary* element of the more serious crime for which he has been charged, his claim of double jeopardy

would be substantial …' (emphasis added).

*Id.* 495 U.S. at 515–16, 110 S.Ct. at 2090, 109 L.Ed.2d at 560–61. The Court then declared, "We believe that this analysis is correct and governs this case." *Id.* 495 U.S. at 516, 110 S.Ct. at 2090, 109 L.Ed.2d at 561.

In the present case, the current prosecution is not barred because it was not necessary for the State to prove the conduct of driving on the wrong side of the road to establish the elements for driving while intoxicated.[5]

We also note the Court's decision in *Ex parte Peterson,* 738 S.W.2d 688, 691 (Tex. Crim.App.1987). In that case, the question presented was whether a prior conviction for driving while intoxicated barred a subsequent prosecution of involuntary manslaughter arising out of the same automobile accident. En route to holding that the subsequent prosecution was barred, the Court stated:

> It is clear from the record that the State, at least under the present indictment, will find it *necessary* to prove that appellant was driving in an intoxicated condition or to rely on conduct necessarily involving that conviction. Because appellant has already been convicted for conduct that is here shown to be a *necessary* element of the more serious crime for which he has been charged, his claim of double jeopardy is substantial … (emphasis added)

In *Rubino v. Lynaugh,* 845 F.2d 1266 (5th Cir.1988), the Court held that the defendant's prosecution for attempted murder did not put him twice in jeopardy, even though the conduct of the attempted murder was developed in evidence in the prior prosecution for aggravated kidnapping. The Court explained its rationale:

> Although in trying Rubino for aggravated kidnapping the State offered evidence that he shot at Weitzman, proof of the attempted murder was not *necessary*

---

**5.** *See, e.g., State v. Marshall,* 814 S.W.2d 789, 793–97 (Tex.App.—Dallas 1991, no pet.); *Kvetinskas v. State,* 809 S.W.2d 914, 915–16 (Tex. App.—Houston [14th Dist.] 1991, no pet.); *State*

*v. Garcia,* 810 S.W.2d 240 (Tex.App.—El Paso 1991, no pet.); *Burke v. State,* 811 S.W.2d 209, 211–12 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd).

to obtain the kidnapping conviction because the State offered sufficient evidence independent of the shooting to support a conviction for aggravated kidnapping. (original emphasis)

*Id.* at 1270. Subsequent to *Grady,* our Court of Criminal Appeals cited with approval this reasoning by the *Rubino* Court. *See Garcia v. State,* 806 S.W.2d 835, 837 n. 5 (Tex.Crim.App.1990), *overruled on other points by Ex parte Ramos,* 806 S.W.2d 845 (Tex.Crim.App.1991).

Additionally, we find another reason why appellant's prosecution was not barred by the Double Jeopardy Clause. In the *Grady* case, the Court stated that the State would not be barred from a subsequent prosecution "if the bill of particulars revealed that the State would not rely on proving the conduct for which Corbin had already been convicted (*i.e.,* if the State relied solely on Corbin's driving too fast in heavy rain to establish recklessness or negligence)." *Id.* 495 U.S. at 523, 110 at S.Ct. 2094, 109 L.Ed.2d at 566.

This record reveals that the State did not rely on the conduct of driving on the wrong side of the road in its prosecution for driving while intoxicated, but relied solely upon other conduct to establish the DWI offense. The only references to appellant's driving on the wrong side of the road during the State's presentation of evidence were not elicited by the State, but were nonresponsive answers. The arresting police officer testified that he had seen a vehicle speeding and "it slid plumb through the Stop sign in front of Allsup's there at Wilson and McGee." No mention of driving on the wrong side of the road had been elicited at that point.

Thereafter, the examination continued:

Q: Okay. What did you do after you observed the vehicle?

A: The vehicle slid plumb through the intersection onto the wrong side of the road right there by the post office and made a right turn and *continued north on the wrong side of the road for nearly a block,* [non-responsive] and I pursued the vehicle and stopped the vehicle

another block further down at Coolidge and McGee.

It is true that the officer later stated that one of the indications that led him to believe that appellant was intoxicated was "the way he was driving." However, in view of the fact that the officer had earlier responsively answered that he had stopped the vehicle because of the speeding and sliding through the stop sign, we do not interpret this necessarily to be a reference to driving on the wrong side of the road.

We also note the other references to driving on the wrong side of the road during the State's presentation of evidence were non-responsive:

Q: Do you recall whether or not he was issued a traffic ticket for speeding?

A: No. He was charged with third offense no insurance, driving on the wrong side of the roadway, and DWI [non-responsive].

\*    \*    \*    \*    \*    \*

Q: In this particular case had the Defendant blown lower than a .1–0, would you have none the less charged him with the offense of driving while intoxicated?

A: More than likely, I would have charged him with the wrong side of the road and the traffic violations [non-responsive]. I don't think I would have charged him with DWI if he had went under. I really don't.

The only responsive testimony concerning appellant's conduct of driving on the wrong side of the road was elicited by the defense counsel, not by the State:

Defense Counsel: Are you saying, then, that the fact that he was speeding indicated that he was intoxicated?

A: No. I said that my observations of him as he came out of the pickup was what led me to believe that. The speeding was what got my attention to him to start with.

Defense Counsel: What about driving on the wrong side of the road?

A: Most definitely when he slid through the Stop sign. (The answer referred to the sliding through the stop sign and not the subsequent driving on the wrong side

of the road, however, even assuming the answer pertained to the driving on the wrong side of the road, the record reveals the testimony was elicited by the defense counsel.)

\* \* \* \* \* \*

Defense Counsel: The fact that he [appellant] drove on the wrong side of the road, did that indicate to you that he was intoxicated?

A: No, sir.

\* \* \* \* \* \*

Defense Counsel: Before that—what I am asking is: Are you saying that when you put together the driving on the wrong side of the road and the speeding and the running the Stop sign and the smell of alcohol, that those indicated to you that he was intoxicated?

A: Yes, sir, once I got him out of the truck.

In summary, the State was not barred from the second prosecution because evidence about appellant's driving on the wrong side of the road was not necessary, or relied upon by the State, to establish an essential element of the offense of driving while intoxicated.

In summary, appellant's point of error is overruled and the judgment of the trial court is affirmed.