**Billie Glen MARTIN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 59074.**

Court of Criminal Appeals of Texas, En Banc.

April 14, 1982.

Donald W. Duesler, Beaumont, on appeal only, for appellant.

Robert Huttash, State's Atty. & Alfred Walker, Asst. State's Atty., Bruce N. Smith, Dist. Atty., and John R. DeWitt, Asst. Dist. Atty., Beaumont, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

Our prior opinion is withdrawn.

In light of the unorthodox way our earlier opinion was produced, the State, in effect, is urging that the Court En Banc engage in its essential function of reviewing an initial opinion on original submission to a panel of the Court.[1] Through examination of portions of the record now pointed to by the State and upon further reflection we believed there is enough substance to certain grounds for rehearing formulated by the State,[2] and granted leave to file to determine anew whether more than the requirements of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (*Faretta*), must be satisfied and, if not, whether they were met by the trial court below.

*Faretta* finds in the Sixth Amendment an independent constitutional right of an accused to conduct his own defense. 422 U.S. at 836, 95 S.Ct. at 2541. Thus, the right to selfrepresentation does not arise from one's power to waive assistance of counsel. *Id.*, at 814–820, 95 S.Ct. at 2530–2533. Therefore, it is for the accused personally to decide whether assistance of counsel in his particular case is to his advantage, and *"his choice must be honored* out of 'that respect for the individual which is the lifeblood of the law,' " *id.*, at 834, 95 S.Ct. at 2541.[3]

To implement the right of selfrepresentation the Supreme Court imposed upon a trial court certain duties which, as now seen, are no more than what is expressly stated in or necessarily implied from the following paragraph:

"When an accused manages his own defense, he relinquishes, *as a purely factual matter,* many of the traditional benefits associated with the right to counsel. For this reason, *in order to represent himself,* the accused must '*knowingly and intelligently' forgo those relinquished*

1. This cause was originally submitted to a panel of the Court; however before an opinion was delivered two members of the panel were no longer judges on the Court. Accordingly, a proposed opinion was circulated to all judges. Thus initial consideration of the principal contention on appeal was undertaken without benefit of a prior panel opinion and a motion for leave to file a motion for rehearing directed to its findings, conclusions and holdings. The motion for leave to file by the State Prosecuting Attorney must be viewed in this light.

2. The first ground, couched by us more in terms of *Faretta v. California*, 422 U.S. 806, 95

S.Ct. 2525, 45 L.Ed.2d 562 (1975), asserts that the record affirmatively reflects that appellant did knowingly and intelligently forgo traditional benefits associated with the right to counsel after having been made aware of the dangers and disadvantages of selfrepresentation. The second is that the original opinion is "essentially grounded on a requirement of colloquies and admonishments which are foreign to the ruling case" of *Faretta*, supra.

3. All emphasis is added unless otherwise indicated.

benefits. *Johnson v. Zerbst,* 304 U.S. [458], at 464–465 [58 S.Ct. 1019 at 1023, 82 L.Ed. 1461]. Cf. *Von Moltke v. Gillies,* 332 U.S. 708, 723–724, [68 S.Ct. 316, 323, 92 L.Ed. 309] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, *he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' Adams v. United States ex rel. McCann,* 317 U.S. [269] at 279 [63 S.Ct. 236 at 242, 87 L.Ed. 268]." *Id.,* at 835, 95 S.Ct. at 2541.[4]

■ The original opinion in the case at bar alludes to prior decisions of the Court and reiterates "requisites" that the State stoutly complains are really "suggestions" which "*are not* an integral part of the *Faretta* rule." (Emphasis by the State.) We agree that *Faretta* does not mandate, in the words of the original opinion in this cause, an "inquiry concerning appellant's age, education, background, or previous mental health history" in *every* instance where an accused expresses a desire to represent himself, for the record may otherwise be sufficient for the Court to make "an assessment

of his knowing exercise of the right to defend himself," *id.,* at 836, 95 S.Ct. at 2541.[5] And in the case at bar we find that assessment is justified.

At the outset we note that the indictment alleged and the State was to prove that appellant had been twice convicted of felony offenses of burglary within six years immediately preceding the instant burglary offense. Thus, like *Faretta,* appellant had some familiarity with the criminal justice system. Similarly, he had made clear well before trial that he desired to represent himself, and that the judge who heard the matter had determined to honor his position was known to the trial judge.[6] Still, the trial judge reprised the matter of selfrepresentation just before beginning one trial of this case October 26, 1977. In the margin we set out pertinent portions of his inquiry—reminiscent of the germane portions of colloquys in *Faretta,* supra, U.S. at 807–810, nn. 2 and 3, 95 S.Ct. at 2527–2529, nn. 2 and 3—that brought the court again to respect the choice of appellant to defend himself.[7]

That done, a jury was selected, according to an entry by the court reporter, by Thomas Mulvaney, an assistant district attorney, and appellant, himself. Before the jury

**4.** Thus, we are unable to agree with the third ground of error on rehearing that there should be applied "the well recognized rule that the actions of a trial court are presumed to be valid." Clearly, Supreme Court insistence that the "record will establish" that one who would represent himself "knows what he is doing and his choice is made with eyes open" charges the trial court with the responsibility of making that record.

**5.** It must be remembered that as well as finding Faretta had not made an intelligent and knowing waiver of right to assistance of counsel, the trial court mixed that finding with a ruling that he had no constitutional right to conduct his own defense. Thus, the question before the Supreme Court was "whether a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so," 422 U.S. at 807, 95 S.Ct. at 2527. The thrust of the answer given by the Supreme Court is that the right of selfrepresentation does exist and must be honored when benefits of assistance of counsel are understandingly relinquished with an informed

awareness of dangers and disadvantages of selfrepresentation. The *Faretta* opinion simply cannot reasonably be read to require that a trial judge spread upon the record all such information and data about an accused that might conceivably impugn his decision to represent himself; rather, its approach is to provide awareness of problems in the undertaking so that the decision is not lightly made.

**6.** Among the papers in the cause is an Indigency Report Form dated October 5, 1977, in which the Pre-Trial Information Program Director reported that appellant "indicated that Judge Gist had allowed him to represent himself and he advised that under no conditions will he want a court appointed attorney..." An October 17 notice of resetting has a notation to the same effect.

**7.** "THE COURT: * * *
   Let the record reflect that the defendant is present before the Court along with Mr. Don Duesler who the Court has appointed as amicus curiae for the benefit of Mr. Martin.
   *    *    *    *    *    *

was seated in the box, out of stated abundance of caution the trial court arraigned appellant, and—still outside the presence of the jury—presented to appellant for execution "if it meets your approval" the written "waiver of attorney" alluded to in the original opinion of the Court.[8] After appellant executed the waiver, the jurors were seated, sworn, empanelled and instructed generally as to their duties. The court announced both sides were having witness problems, and the jury was excused until the next morning.

October 27 the State moved in writing for a continuance on account of unavailability of a material witness and, *without objection*, a mistrial was declared and the case reset for trial November 7. In advance of that day appellant prepared a proper request for issuance of subpoenas for four witnesses. When the trial was again continued, appellant made written protest that he had not been present to object to the continuance; apparently as a consequence the record shows that November 14 appellant moved for a continuance, and that was granted. Trial commenced November 28.[9]

■ Given these facts and circumstances—from initial demand for selfrepresenta-

---

Mr. Martin, whenever you appeared before Judge Gist since I wasn't there I'm going to assume some things and if I am wrong, correct me.

DEFENDANT: Yes, sir.

THE COURT: Whenever you appeared you made it known that you would like to represent yourself. I think at that time he inquired of you and also cautioned you and also admonished you that if you represented yourself the Court would hold you to the same standards that I would hold Mr. Mulvaney over here who is an attorney.

DEFENDANT: Yes, sir.

THE COURT: That I won't or he would not give you any special benefit due to the fact that you are not an attorney. He explained that to you.

DEFENDANT: Yes, sir, he did.

THE COURT: Okay. And after explaining to you and advising you of the advantages and also the disadvantages and personally I can't think of many advantages except possibly the psychological effect of you before a jury without a lawyer, but I can think of many disadvantages and one is that you are not skilled in the Rules of Evidence and not skilled in the Rules of Procedure and the Court is going to hold you to the same standard as I would anyone else.

DEFENDANT: Yes, sir.

THE COURT: That's the biggest disadvantage to you.

DEFENDANT: Yes, sir.

THE COURT: At this time I want to inquire as to whether or not you at this time still wish to represent yourself.

DEFENDANT: Yes, sir, I do.

\* \* \* \* \* \*

THE COURT: You realize, also, Mr. Martin, that Mr. Duesler will be sitting with you purely for advice only.

DEFENDANT: Yes, sir.

THE COURT: He cannot under our law in Texas participate in the trial because I am going to allow you and I am satisfied that you are knowingly and intentionally making the waiver of your right to be represented by an attorney. He is there for you to ask advice of but he cannot participate.

DEFENDANT: Yes, sir.

THE COURT: In other words, you will be the one that has to make any objections and you will be the one that has to handle the case.

If you turn to him and ask for advice he will give you some. If you don't ask him he will not be able to give you any advice.

DEFENDANT: Yes, sir.

THE COURT: Any questions.

DEFENDANT: None at all, sir.

THE COURT: All right. Let the record reflect that the Court is satisfied that Mr. Martin is knowingly and intentionally waiving his right to be represented by an attorney. I will allow him to represent himself and appoint Mr. Don Duesler, an attorney, as Amicus Curiae."

8. *Inter alia* the verified waiver contains a "demand that I be allowed to represent myself" and a statement that appellant does "possess the proper educational, mental, and physical capabilities to represent myself in this case." This waiver alone is not such that will constitute the kind of record contemplated by the Supreme Court in *Faretta*, see note 4 *ante* and accompanying excerpt in the text, but coming as it does after appellant had already been representing himself the waiver has the value of confirmation.

9. When the cause came on for trial November 28, 1977, appellant announced ready, and the court explained to the panel of venire-persons before voir dire commenced that appellant "has elected under our law to represent himself," and he will be "held to the same standards as I will hold Mr. Mulvaney." Prosecutor Mulvaney elaborated on that posture of things, and in his time appellant told the jury, "I don't want

tion, through the confirmed admonishment by Judge Gist, the subsequent inquiry conducted by Judge Giblin, to his participation in the first aborted trial—as to the final completed trial, we find the record establishes that appellant knew what he was doing and his choice was made with eyes open. *Faretta*, supra, U.S. at 835–836, 95 S.Ct. at 2541.

Therefore, the State's motion for rehearing is granted, and we proceed to consider and decide the remaining grounds of error presented by appellant.

■ Ground of error number one asserts that the trial court erred in not submitting a charge on circumstantial evidence. However, appellant does not summarize the evidence to inform us of the circumstantially evidentiary nature of the facts of the matter, and, pointing to his confession to committing the offense, the State insists its case does not depend solely on such character of evidence. Be that as it may, appellant concedes that he did not object to the charge on that account nor request an instruction on circumstantial evidence. Thus, the alleged error has not been preserved for review, as required by Articles 36.14 or 36.15, V.A.C.C.P., and may not be reviewed on appeal unless it appears that his rights were injured or he did not have a fair and impartial trial. Article 36.19, V.A.C.C.P.; *Mills v. State*, 508 S.W.2d 823, 825–826 (Tex.Cr.App.1974); see *Boles v. State*, 598 S.W.2d 274, 278 (Tex.Cr.App.1980). Though it may be that failure to protect the record flowed from deficiencies in the selfrepresentation that appellant demanded be accorded him, such is one of the risks he

assumed.[10] *Hawkins v. State*, 613 S.W.2d 720, 728[11] (Tex.Cr.App.1981); *Trevino v. State*, 555 S.W.2d 750, 751[12] (Tex.Cr.App. 1977).

■ The second ground of error complains that the prosecuting attorney impermissibly commented on failure of appellant to testify. The argument now called to our attention is not, at first blush, a sure implication of a failure to testify. But, alas, we may not further analyze it for, again, the claimed error was not preserved by objection voiced at the time the comments were made. There is nothing to review. *Valore v. State*, 545 S.W.2d 477, 481 (Tex.Cr.App. 1977).

■ The record with respect to the third ground of error, claiming that an account of committing an extraneous offense within appellant's confession to the instant offense should have been excluded by the trial court, is in worse shape than the first two grounds. In a hearing outside the presence of the jury the State authenticated appellant's full confession, but offered an abridged version which omitted appellant's account of the extraneous offense. Appellant, however, insisted that the complete, unabridged confession be admitted in evidence. Of course, he cannot now characterize as error that which was consented to or invited by him, 5 Tex.Jur.2d 611, § 409, nor complain of material in evidence brought out by him while acting as his own attorney, *Gilley v. State*, 114 Tex.Cr.R. 548, 26 S.W.2d 1070 (1930).

Following *Faretta*, the Court has cautioned, "When an accused elects to rep-

you to feel sorry for me cause I am representing myself. I feel that I am capable of representing myself," pointing out that, if not, "I have a more than willing attorney to assist me if I need it."

10. *Faretta*, supra, at n. 46, makes clear that "whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'."

11. "[T]hough not an attorney an accused is expected to conduct himself like one to the extent of his ability to do so."

12. We have found, in effect, that appellant was made "fully aware that he will be on his own in a complex area where experience and professional training are greatly to be desired."

resent himself he cannot complain that the quality of his own defense amounted to a denial of effective assistance of counsel," *Williams v. State*, 549 S.W.2d 183, 189 (Tex. Cr.App.1977). Our disposition of grounds of error one, two and three are the wounds an accused may have to suffer on appeal for exercising his constitutional right to defend himself at trial, and it is little consolation to have it pointed out that they were selfinflicted.

The State's motion for rehearing is granted and the judgment of conviction is affirmed.

W. C. DAVIS, Judge, concurring on State's motion for rehearing.

I concur with the majority opinion adopting a more accurate interpretation of the requirements of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, I think it important to caution that, although the particular inquiry suggested in the opinion on original submission[1] is no longer essential in every case, the record must *affirmatively* reflect that the accused made a knowing and intelligent waiver of his Sixth Amendment right to counsel,[2] having been informed of the dangers and disadvantages of self-representation. See *Faretta v. California*, supra, at 835, 95 S.Ct. at 2541.

Finally, this Court has often reiterated the United States Supreme Court's declaration that a waiver of the right to counsel will not be "lightly inferred" nor presumed from a silent record and that courts will

indulge every reasonable presumption against such a waiver. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), accord; *Geeslin v. State*, 600 S.W.2d 309 (Tex.Cr.App.1980); *Jordan v. State*, 571 S.W.2d 883 (Tex.Cr.App.1978); *Trevino v. State*, 555 S.W.2d 750 (Tex.Cr.App.1977).

ONION, P. J., joins.

TEAGUE, Judge, dissenting on State's motion for rehearing.

I find that a majority of the Court, through Judge Clinton, has sufficiently dealt with all of the issues raised in the appellate brief filed by appellant's court appointed attorney.[1] However, not discussed, presumably because it was not raised in the appellate brief, is an issue which I find should be reviewed in the interest of justice,[2] and that issue is the applicability of the double jeopardy provisions of the Federal and State Constitutions to this cause.

The freedom from being placed twice in jeopardy, as guaranteed in the Bills of Rights of the Federal and State Constitutions, is such a basic and fundamental part of the American scheme of justice that I believe error involving this right is error usually characterized or labeled "Constitutional Error," "Fundamental Error," or "In the Interest of Justice Error." Error so characterized may be raised for the first time on appeal by the appellant, or by the Court *Ex Mero Motu*, or may even be raised after a lengthy period of time has elapsed and after the conviction has become final.

1. The opinion on original submission stated the trial court must inquire into the defendant's background, age, education and experience. See *Geeslin v. State*, 600 S.W.2d 309 (Tex.Cr. App.1980); *Renfro v. State*, 586 S.W.2d 496 (Tex.Cr.App.1979).

2. In *Faretta*, the Court stated, "[t]he record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will." *Faretta v. California*, supra, at 835, 95 S.Ct. at 2541.

1. This does not, of course, mean that I agree with Judge Clinton's opinion, because I do not. I believe that Judge W. C. Davis adequately disposed of the *Faretta* question in the Court's original opinion.

2. Although Art. 40.09(13), V.A.C.C.P., has met its demise, such article was in good health at the time this cause was originally filed and submitted to the Court; therefore, Sec. 13 is applicable to this cause. See *McCarty v. State*, 557 S.W.2d 295 (Tex.Cr.App.1977); *Ex parte Young*, 517 S.W.2d 288 (Tex.Cr.App.1974).

See *Ex parte Myers*, 618 S.W.2d 365 (Tex. Cr.App.1981). I believe that since the claim of double jeopardy can be raised at any time, unnecessary delay would result if this Court were to postpone at this time the inevitable. Therefore, I believe that we should resolve today, not tomorrow, the double jeopardy question that is present in this cause.[3]

The United States Supreme Court, see *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), has ruled that the prohibition against placing a person in Double Jeopardy, as guaranteed under the Federal Constitution, attaches when a jury has been empaneled and sworn. This decision drastically changed Texas law. Needless to say, the Supreme Court did not tarry long when it came to a case from Texas, see *McElwee v. Texas*, 439 U.S. 949, 99 S.Ct. 344, 58 L.Ed.2d 340 (1978), for it vacated by a per curiam decision, in *McElwee*, Id., this Court's judgment, and remanded the case back to this Court for reconsideration in light of *Crist v. Bretz*, supra. This Court on remand, because of the Supremacy Clause of the United States Constitution, see therein Art. VI, ruled that the defendant *McElwee* was entitled to relief, and reversed his conviction. See *McElwee v. State*, 589 S.W.2d 455 (Tex.Cr.App.1979). This Court has held since *McElwee* was decided that *Crist v. Bretz*, Id., is retroactive to those convictions which had become final prior to the decision by the Supreme Court. See *Ex parte Myers*, supra.[4]

From the facts in this cause, and by the above cases, it is obvious that jeopardy attached in appellant's case once the jury was sworn on October 26, 1977. See *Crist v. Bretz*, supra. When the trial court declared a mistrial on October 27, 1977, a trial with a different jury was thereafter barred unless the appellant consented to the mistrial, or it was shown that the mistrial was mandated by some form of manifest necessity. See *Torres v. State*, 614 S.W.2d 436 (Tex.Cr. App.1981). I do not concern myself with the latter as the record neither expressly nor impliedly indicates that the mistrial was mandated by some form of manifest necessity. It is, however, apparent from the record that the trial judge declared a mistrial because the State was unable to procure one of its witnesses, a peace officer who was then hospitalized for reasons not stated in the record.[5] Under the above cases, I do not find this was a sufficient reason to authorize the trial judge to declare a mistrial—unless appellant consented to the act of the trial judge. E.g., *Torres*, Id.

The question, whether or not the appellant consented to the mistrial, however, is another and different matter. In *Torres*, Id., this Court stated:

> Consent need not be expressed, but may be implied from the totality of circumstances attendant to a declaration of mistrial. (Citations omitted.) But before a failure to object constitutes an implied consent to a mistrial, a defendant must be given an adequate opportunity to object to the court's motion. (Citations omitted.) *Id.* at 441–42).

I find that the record is incomplete at this time, which incompleteness prevents this Court from resolving the question, whether

---

3. While the adversary system generally requires that an appellant must raise an issue before we should consider it, nevertheless, when a fundamental right has been abridged, this Court should notice and review that issue on its own. Art. 40.09(13), supra. When an appellant can raise such fundamental error at any time, it is far better to dispose of the issue as soon as possible, because relevant records and other evidence are more likely to be available, and testimony will likely be more accurate if an evidentiary hearing is required at this time rather than later.

4. Almost one year after this Court's decision in *Myers*, Id., the Fifth Circuit Court of Appeals, in *Von Burleson v. Estelle*, 666 F.2d 231 (5th Cir. 1982), ruled that *Crist v. Bretz*, supra, was to be applied retroactively.

5. Such fact is reflected in the State's written Motion for Continuance, which caused the trial judge to declare a mistrial.

or not the appellant consented to the trial court's declaration of a mistrial on October 27, 1977.

A supplemental statement of facts [6] was filed in the trial court on May 30, 1978. It reflects the events that occurred on October 26, 1977. As to October 27, 1977, the only thing that is shown to have occurred is reflected by a short conclusory statement of the court reporter:

> (WHEREUPON, on Thursday, October 27th 1977 at 10:00 the State made a Motion for Continuance and it was granted by the Court and the case was reset for the month of November, 1977).

As easily seen, nothing is expressly stated in the court reporter's notes concerning either the trial court's declaration of a mistrial or whether the appellant was present when the motion for continuance was made by the State and granted by the trial court. In fact, the only place in the entire record on appeal, where anything is stated which concerns the trial judge's declaration of a mistrial, is the docket sheet, and it reflects only the following: "10/27/77 State moved for a cont. Judge granted cont. & case declared a mis-trial. Indictment had not been read and the def. had not answered to it." [7]

As noted, the record does not affirmatively reflect whether the appellant was present on the morning of October 27, 1977, when the trial judge declared the mistrial and discharged the jury. As to the State's Motion for Continuance containing a statement, that the appellant did not object to the trial court's granting the State's motion, I do not believe that this is the equivalent of him consenting to the trial judge's declaring a mistrial. The appellant's consent to the State's Motion for a Continuance may well have contemplated having the trial recommence with the same jury at a later date.

If the appellant was not present in court on October 27, 1977, when the trial judge declared the mistrial, he was not "given an adequate opportunity to object to the court's motion." *Torres,* supra.

Since the record on appeal is insufficient at this time to permit this Court to make a determination whether appellant's failure to object constituted an implied consent to the mistrial, and since neither the State [8] nor the appellant have had an adequate opportunity to supplement the record on appeal to demonstrate whether consent, either express or implied, may in fact have existed, I would abate this appeal to allow both the State and the appellant the opportunity to supplement the record,[9] and to show whether or not the appellant consented to the mistrial. If such consent cannot be demonstrated, I would hold that the appellant's conviction in this cause was barred by the Federal and State Constitutional provisions of Double Jeopardy.

For failure of the majority not to abate the appeal, I respectfully dissent.

6. After the appellant raised the issue of whether he had been sufficiently admonished, concerning the dangers of self-representation, the State was correctly permitted to supplement the record to reflect the admonishments which appellant had received on that issue. See *Armstrong v. State,* 550 S.W.2d 25, 29 (Tex.Cr.App. 1977).

7. The docket sheet does not reflect that appellant was present in court on October 27, 1977.

8. Since the issue has not heretofore been raised, the State had no reason to have the appeal record reflect any facts favorable to a finding of implied consent.

9. And their respective appellate briefs, if they desire.