William KLASING, Appellant,

v.

STATE of Texas, Appellee.

No. 13–82–306–CR.

Court of Appeals of Texas,
Corpus Christi.

Dec. 15, 1983.

Shannon Salyer, Burkett & Burkett, Inc., Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before BISSETT, KENNEDY and GONZALEZ, JJ.

## OPINION

BISSETT, Justice.

A Nueces County jury convicted appellant William Klasing of murder and found that the allegations with respect to two prior felony convictions were true. The trial court assessed punishment at life imprisonment in the Texas Department of Corrections. Klasing now appeals to this Court on five grounds of error. We affirm.

The homicide in question took place on March 21, 1982, outside of Meri's Malibu Inn in Port Aransas, Texas. On that night, Hicks Elliff fatally wounded Michael Knight with an unknown weapon. We need not summarize all of the events surrounding the homicide, since the only ground of error presented which deals with the events of that night is an insufficient evidence ground. Accordingly, we shall discuss that ground first.

Appellant argues in his fifth ground of error that there was no evidence presented at trial which showed that he intended to promote or assist the commission of this offense by encouraging, directing, aiding, or attempting to aid Hicks Elliff, in the killing of Michael Knight, except for the testimony of Robert Boehmer, an eyewitness for the State. Appellant first contends that Robert Boehmer testified that he did not see Michael Knight get stabbed by anyone. The

record indicates Boehmer testified in pertinent part on direct examination as follows:

"Q All right now, when you say those Bandidos, could you be more specific? What did you actually see when you looked back there?

A One of the Bandidos was holding one of the guys up under the arms.

Q Which Bandido was holding him?

A He was.

Q This man right here?

A Yes.

Q William Klasing?

A Yes.

Q And he was holding who up under the arms?

A Michael Knight.

\* \* \* \* \* \*

Q Could you hear what Mike Knight was saying?

A I didn't hear him say anything.

Q Could you hear anything that this man was saying?

A No.

Q Okay. Now what else did you see?

A While he was being held another one of the Bandidos cut him and right after that the Bandido that was holding the other guy cut, cut the other guy."

On cross-examination, Boehmer testified in pertinent part as follows:

"Q Okay. Is it possible, Mr. Boehmer, that since you didn't actually see a knife and didn't see any cuts that you could have simply seen some blows being thrown over there?

A No.

Q What distinguishes that in your mind between a fist being thrown like this and something like that?

A The blood coming out of the guy's mouth.

Q All right, did you feel like he'd been stabbed in the mouth?

A No.

Q But that was what gave you the impression that he had been stabbed?

A Yes.

Q Although you never saw an actual knife or a cut, is that correct?

A I don't really understand what you mean. I didn't see a knife, no. I saw the cut.

Q Well, that was later though?

A Yeah.

Q Not at that particular moment, is that correct?

A Yeah."

On redirect examination, Boehmer further testified in part:

"Q What did Mike Knight do after you saw this slashing motion across his chest?

A The blood came out. It looked like it came out of his mouth to me and then he got dropped, he dropped on the ground.

Q Did Mike Knight ever rise to his feet again?

A Not that I know of.

Q Did you ever see Mike Knight walk around and talk again?

A No.

Q Is that one of the ways you told that the man had been stabbed?

A Yes."

■ We hold that this testimony is sufficient evidence for the jury to find beyond a reasonable doubt that Michael Knight was stabbed while appellant was holding him "up under his arms." It is clear that if appellant was holding Michael Knight at the time he was stabbed, appellant was a party to the homicide. Appellant's fifth ground of error is overruled.

We now turn to appellant's four remaining grounds of error. In the first ground, appellant asserts that the indictment is fatally defective for failing to allege a culpable mental state. The jury found that appellant was guilty of murder, "as alleged in Count 1 of the indictment." Count 1, in pertinent part, reads as follows:

"... that William Klasing, hereinafter styled defendant, on or about the 21st day of March, A.D. 1982, and before the presentment of this indictment, in the County and State aforesaid, did then and there intentionally and knowingly cause the death of an individual, Mike Knight,

by cutting him with a sharp object, the exact nature of which is unknown to the Grand Jury ..."

■ Appellant relies on the Court of Criminal Appeals' first opinion in *Lugo-Lugo v. State*, which has been withdrawn. On the State's Motion for Rehearing, the Court of Criminal Appeals, sitting en banc, affirmed the judgment of conviction. *Lugo-Lugo v. State*, 650 S.W.2d 72 (Tex.Cr. App.1983). We hold that the indictment in this case was not fundamentally defective. Appellant's first ground of error is overruled.

In the second ground of error, appellant argues that there was a fatal variance between the indictment and the proof as regards to enhancement paragraph number two of the indictment, which stated that appellant was convicted of felony possession of marihuana in Cause Number 12176. The supplemental charge to the jury also used Cause Number 12176. State's Exhibit Three reflects a felony conviction for possession of marihuana in cause number 121716. However, Exhibit Three also reveals that appellant was sentenced on April 8, 1970, in the 174th District Court of Harris County, Texas, the same date, court and place forth in the indictment.

■ In alleging a prior conviction to enhance punishment, variance between allegation of indictment and the proof presented at trial is a material and fatal variance only if it would mislead a defendant to his prejudice. *Hall v. State*, 619 S.W.2d 156 (Tex.Cr.App.1980). Obvious typographical errors have been held not to result in a fatal variance. *Baity v. State*, 455 S.W.2d 305 (Tex.Cr.App.1970), cert. den. 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158. Appellant could not be said to be prejudiced in this case because one digit of the cause number was the only variance between the indictment and the proof. We do not feel that the mere omission of a single digit in the cause number is sufficient to show a fatal variance between the indictment and the proof, particularly when the same other five digits were present in the cause number shown on State's Exhibit Three and in

the same sequence. We hold that this is not a fatal variance. *See Cole v. State*, 611 S.W.2d 79 (Tex.Cr.App.1981).

Appellant also urges us in the second ground to reverse and remand this case on the enhancement issue because the State did not prove the exact date of the offense, only the date of initial arrest for possession of marihuana, so that Section 12.42(d) of the Texas Penal Code was not complied with.

■ The State has the burden to prove that the second felony conviction was for an offense which occurred after the first felony conviction became final. *Porter v. State*, 566 S.W.2d 621 (Tex.Cr.App.1978). The State can meet its burden by introducing copies of the judgment and sentence in each of the felonies and connecting them with the appellant. Once the State has made out its prima facie case, the burden shifts to appellant. *Tinney v. State*, 578 S.W.2d 137 (Tex.Cr.App.1979). The State must connect the second previous felony conviction with an *offense* which occurs after the first previous conviction has become final. *Ex parte Augusta*, 639 S.W.2d 481 (Tex.Cr.App.1982); *Cooper v. State*, 631 S.W.2d 508 (Tex.Cr.App.1982); *Turner v. State*, 550 S.W.2d 686 (Tex.Cr.App.1977).

■ The record shows that appellant was convicted of the felony offense of passing a forged instrument and sentenced to three years' imprisonment on September 17, 1962. He did not appeal that conviction. The record further shows that appellant was initially arrested for the felony offense of possession of marihuana on September 24, 1965, was indicted for this offense in March or April, 1966, and was sentenced on April 8, 1970 to a prison term of two to ten (2–10) years beginning March 24, 1969. Appellant then appealed this conviction and was released on bond. The Court of Criminal Appeals affirmed the conviction on February 22, 1971. An alias capias was then issued for appellant, who was taken into custody at some later date. He began serving his sentence on May 26, 1978. The period within which an indictment could

have been returned in 1966 for the offense of possession of marihuana was three years. TEX.CODE CRIM.PROC. art. 180 (1925) (Repealed 1966). It is therefore presumed that the offense was committed three years before the return of the indictment in March or April, 1966. *Alvarez v. State,* 536 S.W.2d 357 (Tex.Cr.App.1976), cert. den. 429 U.S. 924, 97 S.Ct. 325, 50 L.Ed.2d 292; *Villareal v. State,* 468 S.W.2d 837 (Tex.Cr.App. 1971). Therefore, it is presumed that the offense could not have been committed earlier than March 1, 1963, which was after appellant's prior felony conviction had become final on September 17, 1962. Since we may presume that the second prior felony conviction was for an offense committed after his first prior felony conviction became final, we hold that the requirements of Section 12.42(d) have been met. Appellant's second ground of error is overruled.

In the third ground of error, appellant asserts that the trial court erred in failing to grant his motion to quash the indictment. Appellant argues that the indictment should have been quashed because defendant did not have the assistance of counsel before he entered the grand jury room to testify. This Court will indulge every reasonable presumption against waiver of the right to counsel. *Nash v. State,* 591 S.W.2d 460 (Tex.Cr.App.1980). However, it is for the defendant personally to decide whether assistance of counsel in his particular case is to his advantage. *Martin v. State,* 630 S.W.2d 952 (Tex.Cr.App.1982). The record reflects that appellant did not ever request to consult with his attorney and that he was not prevented from consulting with him. Appellant testified as follows on this matter during the pre-trial hearing on the motion to quash:

"Q All right, Mr. Klasing, did you, were you ever deprived of, did you ever attempt to consult with Mr. Yaffe or were you prevented from consulting with him?
A No, sir, I did not."

Appellant's testimony further reflected that he was somewhat familiar with the criminal process due to his prior convictions and that he felt that nothing came up during the grand jury proceeding for which he would have consulted his attorney. Appellant's third ground of error is overruled.

Appellant contends in his fourth ground of error, that the trial court committed reversible error by not granting appellant's motion to suppress any physical evidence seized from his arrest or any statements made as a result of his arrest. The trial court granted appellant's motion as to written statements, but not as to physical evidence. Appellant argues that there was not sufficient probable cause to arrest him.

The record shows that appellant was pointed out to the police officer at the scene by two different persons as being among the perpetrators of the crimes committed that night. Probable cause to arrest exists where the facts and circumstances within the knowledge of the arresting officer and of which he had reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime. *Jones v. State,* 565 S.W.2d 934 (Tex.Cr.App.1978). As long as the arresting officer has information from another officer who has knowledge sufficient to constitute probable cause, then a warrantless arrest may be made. *Tarpley v. State,* 565 S.W.2d 525 (Tex.Cr.App.1978). It is clear that the officer at the scene had probable cause to make an arrest then and there if he had wished to. Instead, he asked appellant to accompany him to the station and appellant complied. Appellant was arrested at the police station. The investigating officer had sufficient evidence of the crime and who committed it to place appellant under arrest. A number of personal items were seized from the appellant as evidence at the time of arrest, including three knives, a blue denim vest, sixteen patches, and thirteen pins.

A search incident to a lawful arrest requires no warrant if it is restricted to a search of the person or of objects immediately associated with appellant's person. *Jones v. State,* 640 S.W.2d 918 (Tex.Cr.App.1982). The fruits of such a search are admissible in evidence. *New-*

*house v. State,* 446 S.W.2d 697 (Tex.Cr.App. 1969). Therefore, the motion to suppress the physical evidence seized was properly denied. Appellant's fourth ground of error is overruled.

The judgment of the trial court is AFFIRMED.