**Marshall JACKSON, Jr., Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–87–202–CR.**

Court of Appeals of Texas, Fort Worth.

June 28, 1989.

Tim Curry, Crim. Dist. Atty. and Betty Stanton, Asst. Crim. Dist. Atty., Fort Worth, for appellant.

Santiago Salinas, Fort Worth, for the state.

Before WEAVER, C.J., and JOE SPURLOCK, II and KELTNER, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

Marshall Jackson, Jr., appellant, was charged with aggravated robbery with a deadly weapon. *See* TEX.PENAL CODE ANN. sec. 29.02 and sec. 29.03 (Vernon 1989). The jury found appellant guilty, and the judge sentenced him to forty years in the Texas Department of Corrections.

Appellant raises three points of error: (1) the trial court erred in granting appellant's request to represent himself because his waiver of the right to be represented by counsel was not knowing and intelligent; (2) the evidence is insufficient to support appellant's conviction for aggravated robbery; and (3) the evidence is insufficient to support an affirmative finding of a deadly weapon.

We affirm.

At approximately 5:30 p.m. on August 1, 1988, Paul Nwachukwu (Paul), a taxi driver for the West End Cab Company, was approached by a woman at the Trailways Bus Station in Dallas. She first asked Paul to radio Mr. George, whom she represented was her brother, and indicated also worked for West End Cab Company. Paul contacted his dispatcher, but no one was aware of anyone by that name working for the company. The woman then asked if Paul would drive her and her new husband (appellant) to Fort Worth, which he agreed to do.

The woman sat in the front and appellant sat behind her. The woman directed Paul along Interstate 30 and Loop 820 to a dead-end street somewhere in east Fort Worth. Apart from directions given by the woman, there was no conversation. When Paul stopped the car and asked to be paid the amount indicated by his meter, the woman asked appellant for the money she had given him. At that point she and appellant left the cab and had a discussion behind the car. They then came back to Paul, and appellant asked him if he had change for $100.00. He responded that he could take them to a nearby store to get change. At that point, the woman snatched the car keys from the ignition and when Paul asked for them back the woman reached into Paul's breast pocket and removed $160.00. Paul attempted to catch the woman and it was at this point that appellant stepped between them and accused Paul of

trying to cheat them. The woman made the same accusation. As he blocked Paul's way, appellant opened his suit coat and *"was about to draw"* a handgun, the upper part of which was visible to Paul. Appellant had his hand on the gun. He stated "this is the type of thing that will get you shot." The woman pleaded with appellant not to "bust" Paul and ordered him (Paul) to sit down. Paul testified he was "terrible scared" and thought "the end" was near.

The woman and appellant drove off in Paul's taxi, with the woman behind the wheel and appellant next to her. According to Paul, he let them drive off because he was trying to save his life. By his second point of error, appellant argues the evidence is insufficient to support his conviction for aggravated robbery. He contends the State did not prove he was aware of everything that the woman had done and is therefore not guilty of robbery. He argues there is *no evidence the gun was ever pulled* and pointed at Paul and for these reasons the evidence is insufficient to support a conviction for aggravated robbery. He also contends he was simply protecting his female companion from another man.

■ In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *See Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Wilson v. State*, 654 S.W.2d 465, 471 (Tex. Crim.App.1983) (opinion on reh'g).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *See id.*

■ Under the Texas Penal Code, a person commits robbery if, in the course of committing theft as defined in chapter 31 of the Texas Penal Code and with intent to obtain or maintain control of the property he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See* TEX.PENAL CODE ANN. sec. 29.02(a). Also, under the Texas Penal Code, a person commits aggravated robbery if he commits robbery as defined under section 29.02 of the code and he uses or *exhibits* a deadly weapon. *See* TEX.PENAL CODE ANN. sec. 29.03(a).

Appellant was charged with aggravated robbery, committed alone or as a party with his woman companion.

Appellant was identified by Paul. During the incident, $160.00 was taken from Paul by appellant's companion. This was after appellant asked Paul if he had change for $100.00. As Paul attempted to pursue appellant's companion appellant stepped in front of him and exhibited a weapon, preventing any further action on Paul's part to regain his property. Paul feared for his life. In his words: "I was terrible scared. I thought that was the end of it."

Clearly, the jury could have found the elements of aggravated robbery beyond a reasonable doubt from the evidence before it. Appellant in the course of committing theft, with intent to maintain control of Paul's property, knowingly and intentionally placed him in fear of imminent bodily injury or death, through exhibition of a deadly weapon.

Appellant's contention that he was simply protecting his female companion from another man lacks credence. The evidence shows he was protecting her from their victim's attempt to regain his property which she had just taken.

The conference outside the victim's hearing, the request for change for $100.00, the theft of the money from the victim following immediately thereafter, combined with

appellant's immediate intercession between his companion and the victim as the victim attempted to regain his property, taken along with the fact that both escaped in the victim's cab, belie appellant's hypothesis that he was merely protecting his companion from another man.

■ In making the determination of whether appellant participated in the crime, the jury can examine events before, during, and after the commission of the offense, including actions which show an understanding or common design to do a certain act. *Harris v. State*, 645 S.W.2d 447, 457–58 (Tex.Crim.App.1983). Appellant's second point of error is overruled.

■ By his third point of error, appellant argues the evidence is insufficient to support an affirmative finding by the jury of the use of a deadly weapon.

Appellant urges that at the time he exhibited his gun, there was no evidence he knew Paul had been robbed by his companion. He argues the burden is on the State to prove a weapon had been used and also that appellant knew what was going on.

The jury found beyond a reasonable doubt by their verdict that appellant knew what was going on. The evidence is sufficient to support their verdict in that regard.

Paul indicated by his testimony that appellant exhibited a handgun during the incident. A handgun is a deadly weapon per se. *See Ex parte McLemore*, 717 S.W.2d 634, 636 (Tex.Crim.App.1986) (en banc). The evidence is sufficient to show appellant exhibited a deadly weapon during the commission of a felony offense. Appellant's third point of error is overruled.

■ By his first point of error, appellant contends the trial court erred in granting his request to represent himself because there was no knowing and intelligent waiver by him of the right to be represented by counsel.

Appellant's argument revolves around his claim that he did not have sufficient capacity to understand the circumstances his decision would involve and therefore could not make a knowing and intelligent waiver.

To implement the right of self-representation, the Supreme Court, in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, (1975), imposed upon a trial court certain duties which are no more than what is expressly stated in or necessarily implied from the following paragraph. *Martin v. State*, 630 S.W.2d 952, 953 (Tex. Crim.App.1982).

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forego those relinquished benefits. [Citations omitted]. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [Citations omitted].

*Faretta* 422 U.S. at 835, 95 S.Ct. at 2541.

The trial court's admonition and the defendant's affirmative waiver must appear of record. *Bell v. State*, 734 S.W.2d 80, 82 (Tex.App.—Austin 1987, no pet.). *Faretta* does not mandate an inquiry concerning appellant's age, education, background, or previous mental history in every instance where an accused expresses a desire to represent himself. *Martin v. State*, 630 S.W.2d at 954. But these are certainly factors which courts may consider in determining whether waiver of counsel is knowing and intelligent.

Appellant's second court appointed counsel [1] moved for a psychiatric examination of appellant, which the trial court ordered.

---

1. Appellant refused his first appointed counsel and filed a grievance against him, he also filed a grievance against his second appointed attorney and also filed one against one of the prosecutors handling the case.

The psychiatrist, Dr. Barry Newman, in his report to the trial court stated the following:

1. In my opinion the defendant adequately understands his current legal situation, the charges against him, and the legal issues and procedures in this case. He comprehends the possible dispositions, pleas and penalties. His ability to consult with his attorney with a reasonable degree of rational understanding is not impaired. Further, it is my opinion that he is able at this time to comprehend instructions and advice of counsel and able to make rational decisions after that advice.

2. There is no indication that the defendant is suffering from a severely abnormal mental condition which would grossly and demonstrably impair his perception and understanding of reality.

3. I estimate that the defendant has a Full Scale IQ of 85, placing him in Wechsler's Low Average range of intellectual abilities. He does not meet the criteria for classification as a mentally retarded person.

Dr. Newman noted, in his notes regarding the actual interview and his observations, that appellant was correctly oriented as to time, place, and person at the time of the interview. He noted appellant's speech was relevant and coherent, although he was hostile and agitated (noting that this was not unusual considering appellant's then current situation). He stated there was no indication of conceptual disorganization and no evidence of auditory or visual hallucinations. Dr. Newman's observations included the following:

Mr. Jackson presents himself as an individual who has a large chip on his shoulder. He talks constant "bullshit." His mouth runs nonstop, sometimes regarding the topic at hand, sometimes regarding nothing in particular. It is not the babbling of an individual with a mental illness, rather it is the babbling of someone, as if they were taking methamphetamine or were simply hyperactive. This gentleman fancies himself a jailhouse lawyer and went on to point out the finer points of the legal system and expound on why he was being held illegally. When the jailors on the floor where he was held were questioned, they stated that he is a troublemaker who seems to possess a great deal of racial bigotry and is constantly on the lookout for ways in which to agitate those around him.

....

This gentleman is competent to stand trial. There is no indication of any type of mental illness or emotional disturbance which would preclude his ability to understand right or wrong or which would preclude him following the instructions and advice of counsel.

Appellant made more than twenty pro se motions to the court. Appellant argues these motions should have been more closely reviewed as indications of his lack of ability to make sound decisions regarding his defense. Appellant contends that while in some cases he cites legitimate authority, he really shows more skill at copying than at effectively representing himself. The fact that appellant may be ineffective in representing himself, after a review of the circumstances, does not persuade us of any lack of capacity on his part to make an intelligent and knowing decision to represent himself. The fact that appellant in some of his motions invokes the word of God also does not persuade us of his lack of capacity. A number of pro se appellants come before us invoking the ultimate authority. Appellant also cites to case authority, the Constitution of the United States, the Texas Constitution, Attorney General Jim Mattox, and the Honorable Eldon B. Mahon, Judge in the United States District Court for the Northern District of Texas. Simply because appellant does not have the legal expertise to know what is or is not legally binding authority in the trial court does not indicate a lack of capacity to make the choice of self-representation.

The record clearly reflects the court *repeatedly* admonished appellant about the pitfalls and possible consequences resulting from his choice of self-representation. Appellant was adamant.

Appellant testified he had a tenth grade education in public school, followed by eight years of tutoring. He now contends further inquiry should have been made into his education, arguing more inquiries should have been made as to what kind of private school he attended, its accreditation and location. We disagree. The court was dealing with an individual thirty-one years of age. It was able to observe appellant first hand. Appellant clearly stated he had a tenth grade education. Additional inquiry regarding who tutored him and where was not necessary.

We do not agree with appellant that he lacked capacity to make a knowing and intelligent decision regarding self-representation.

Appellant was, as we previously noted, thirty-one years of age at trial. He has a tenth grade education (with additional tutoring). He professed court experience derived from several other jury trials in which he was involved. The trial court repeatedly admonished appellant concerning the pitfalls of self-representation. The court advised appellant of the serious nature of the crime with which he was charged and the possible punishment range involved. The court warned appellant of his responsibility to voir dire the jury, examine and cross-examine witnesses, examine the court's charge, and argue the evidence and make final summation to the jury. The court admonished appellant that he would be going up against two skilled prosecutors from the district attorney's office; licensed attorneys with much experience. Appellant stated on the record that he understood what the judge was saying.

Mr. Roper, one of the State's prosecutors, also warned appellant about being bound to comply with the rules of evidence, and of the obvious disadvantages of self-representation: that appellant would not be as skilled in cross-examination of witnesses; and that he would not be able to argue as effectively as an attorney.

Appellant was repeatedly made aware of the dangers and disadvantages of self-representation. The record well establishes appellant knew what he was doing and that he made his choice of self-representation "with eyes open." Appellant's first point of error is overruled.

The judgment is affirmed.