**Opinion filed August 30, 2013**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-11-00308-CR, 11-11-00309-CR, & 11-11-00310-CR

_____

### GARY DON BEASON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause Nos. CR21120, CR21121, & CR21122**

### M E M O R A N D U M   O P I N I O N

The trial court convicted Gary Don Beason of the offense of manufacture of a controlled substance, possession or transportation of certain chemicals with the intent to manufacture a controlled substance, and endangering a child. The trial court found two enhancement paragraphs to be true, and it assessed Beason's punishment at confinement for twenty years on the charge of endangering a child, confinement for sixty years on the manufacturing charge, and confinement for

sixty years on the possession-of-chemicals charge. When it sentenced Beason, the trial court ordered that the sentences were to run concurrently. We affirm.

Because there is no challenge to the sufficiency of the evidence, we need not detail it. Beason complains in his first issue in each appeal that the trial court erred when it denied him a jury trial because that denial violated his rights under the United States Constitution, the Texas constitution, and the laws of Texas.

In Beason's second issue in each appeal, he takes the position that the trial court erred when it refused to allow him to withdraw waivers of trial by jury that he had entered in each of the three cases. In so doing, the trial court, according to Beason, violated his rights under the United States Constitution and the Texas constitution and under the laws of Texas.

Finally, in his third issue in each appeal, Beason argues that the trial court erred when it allowed him to represent himself at trial because such action denied him "the right of assistance of counsel in that, [Beason] did not knowingly and intelligently waive counsel in violation of the" Sixth Amendment to the United States Constitution and Article I, section 10 of the Texas constitution.

On July 23, 2010, the trial court notified Fred Franklin that it had appointed him to represent Gary Don Beason. Subsequently, Franklin died, and by order dated December 9, 2010, the trial court appointed another attorney, Judson Woodley, to represent Beason. On February 7, 2011, the trial court set the cases for pretrial hearings on February 22, 2011, and for trial on its jury docket on April 11, 2011. The trial court set a March 31, 2011 deadline for plea bargains. On April 1, 2011, the State filed its application for the issuance of subpoenas to be returnable on the date of the trial court's jury setting.

Although dated April 14, 2011, on April 8, 2011, in each case, Beason filed a waiver of his right to trial by jury. The waivers were agreed to by the State and the trial court. In his waivers, Beason stated that he "voluntarily, intelligently, and

2

knowingly waiv[ed] his right to trial by jury as guaranteed to him by the Constitutions of the United States and of the State of Texas." Further, Beason stated that he executed the waivers with a "full understanding that trial by jury is a valuable right." He also acknowledged that he had discussed the waivers with his lawyer and that he wanted the cases to "be tried to the Court without benefit of jury." On April 13, 2011, the trial court set the cases for an open plea on May 31, 2011. On May 24, 2011, the State filed its application for new witness subpoenas to be returnable on May 31, 2011.

At the May 31, 2011 hearing, counsel informed the trial court that Beason wanted to withdraw his jury trial waivers. After trial counsel at the time acknowledged that the State had agreed to the waivers and that the trial court had approved them, he told the trial court that Beason wanted to withdraw the waivers for "[no] particular reason other than it's just that - - his position has changed, he has decided he doesn't want to plead guilty. He wants to have a jury determine whether or not he is guilty." However, later in the hearing, Beason told the trial court, "[T]he reason I'm changing my mind about the jury waivers and the guilt-innocence rather than an open plea is because the District Attorney won't come off of his plea bargain." The trial court overruled the motion. And, because everyone had anticipated that Beason would enter open guilty pleas, none of the parties were ready to proceed to trial that day. Additionally, another matter arose as a result of the change in the plea status: a potential conflict that Woodley brought to the attention of the trial court.

Woodley also represented two of Beason's codefendants. After it had been made aware of the possible conflict arising from Woodley's representation of Beason as well as the two codefendants, the trial court removed Woodley and appointed Evan Stubbs to represent Beason.

3

On July 25, 2011, on Beason's behalf, Stubbs filed in each case a formal motion to withdraw Beason's jury waiver. In each motion, Stubbs stated, "According to [Beason], different Counsel was previously appointed to represent him in this case. [Beason's] prior Counsel also represented two co-defendants at the same time, one appointed and one retained." Beason also claimed that he believed "that this was a conflict of interest and that he was guided into filing a jury waiver in this case by prior counsel, and that such act was not in his best interest." In each motion, Stubbs stated that he had "no personal knowledge of these events" but that he was filing the motion at Beason's request. The trial court denied the motions on August 8, 2011.

On that same day, Beason filed in each case a waiver of right to counsel and wanted to represent himself. In accordance with Beason's request and his waiver of right to counsel, the trial court removed Stubbs as Beason's trial counsel; appointed Stubbs as standby counsel; and, after appropriate examination, allowed Beason to act as his own lawyer. The trial court set the cases for nonjury trial on September 12, 2011, subject to cases already set on the jury docket for that time. The State once again made application for subpoenas for its trial witnesses. The cases proceeded to trial on September 14, 2011. We have previously set forth the results of that bench trial as to all three cases.

Beason's first contention is that the trial court abused its discretion when it denied him the right to a jury trial. He bases this claim on the Sixth Amendment to the United States Constitution; Article I, sections 10 and 15 of the Texas constitution; and Sections 1.12 and 1.13(a) of the Texas Code of Criminal Procedure. There can be no doubt that the named provisions provide a defendant with the right to a jury trial. *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009). Likewise, there can be no doubt that a defendant may waive his right to trial by jury. TEX. CODE CRIM. PROC. ANN. art. 1.13 (West Supp. 2012).

4

In order for a waiver of jury trial to be effective, it is incumbent upon the State to "establish, on the record, a defendant's express, knowing, and intelligent waiver of" his right to trial by jury. *Hobbs*, 298 S.W.3d at 197. For the first time, on appeal, Beason claims that his waivers of jury trial were invalid because the record does not show that he was present in open court on that day when the waivers appear to have been signed. Because Beason never made that complaint in the trial court, he has not preserved it for appeal. *See* TEX. R. APP. P. 33.1.

However, the record in each case reflects that "both sides announced ready for trial, and the Defendant, Defendant's [standby attorney], and the State's attorney agreed in open court and in writing to waive a jury in the trial of this cause and submit it to the Court." Recitations in a formal judgment are binding in the absence of direct proof that they are false. *Breazeale v. State*, 683 S.W.2d 446, 450–51 (Tex. Crim. App. 1984). There is no direct proof in these cases that those recitations are false, and in the trial court, Beason never made that claim. Rather, Beason's claim in the trial court was based entirely upon his asserted right to *withdraw* his jury waivers.

A defendant may withdraw a jury waiver if his motion is made sufficiently in advance of trial that the granting of the motion would not produce adverse consequences. *Marquez v. State*, 921 S.W.2d 217, 221–22 (Tex. Crim. App. 1996). A motion to withdraw a waiver of a jury trial is a request to change the status quo. Threrefore, the movant has the burden to offer facts that would show that he is entitled to relief. *Id.* at 222–23. If a defendant wants to withdraw a prior written waiver of his right to trial by jury, he has the burden to establish, on the record, that the request is made "sufficiently in advance of trial such that granting his request will not: (1) interfere with the orderly administration of the business of the court; (2) result in unnecessary delay or inconvenience to witnesses, or (3) prejudice the State." *Hobbs*, 298 S.W.3d at 197–98. We review the trial

5

court's ruling on a motion to withdraw a jury waiver for an abuse of discretion. *Marquez*, 921 S.W.2d at 219.

Beason's request to withdraw his jury waivers was based, in part, upon a conflict of interest that had arisen between Beason and his two codefendants. We have already discussed that conflict, and the record does not reflect that the subject of that conflict of interest was ever discussed in the trial court in the context of jury waivers.

The other assertion that Beason made in the trial court as a basis for withdrawal of his jury waivers was that he wanted to withdraw them because "the District Attorney won't come off of his plea bargain." The record on appeal does not show that Beason established any of the three requirements. We cannot say that the trial court abused its discretion when it refused to allow Beason to withdraw his jury waivers. Beasons's first and second issues in each appeal are overruled.

In his third issue in each appeal, Beason argues that the "trial court erred in allowing Appellant to represent himself and denied Appellant the right of assistance of counsel in that Appellant did not knowingly and intelligently waive counsel." Beason contends that, because "the trial court failed to explain the law of parties" and failed to "explain the charge to Appellant in sufficient detail" and because he essentially admitted that he had committed the three offenses when he testified at trial, he did not "have a rational understanding [of] the nature of the charge he was facing and the proceedings against him." Beason further contends that, because he failed to have a rational understanding of the charges he was facing, "he was, therefore, incompetent to intelligently and knowingly waive counsel." Beason essentially argues that his performance at trial was so deficient as to render involuntary his waivers of counsel.

An accused has a constitutional right to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 812–13 (1975); *Martin v. State*, 630 S.W.2d 952, 953 (Tex. Crim. App. 1982). The trial court is obligated to make sure that the accused is "aware of the danger and disadvantages of self-representation, so that the record will establish that he knows what 'he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). "The decision [to waive the right to counsel] is made 'voluntarily' if it is uncoerced," and it is made knowingly and intelligently "if it is made with the full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation." *Collier v. State*, 959 S.W.2d 621, 626 (Tex. Crim. App. 1997) (citing *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993)).

The Supreme Court has explained that "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Godinez*, 509 U.S. at 399. When assessing whether an accused made an intelligent and knowing waiver of the right to counsel, we may consider "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *see also Williams v. State*, 252 S.W.3d 353, 357 (Tex. Crim. App. 2008). However, a trial court "has no duty to inquire into an accused's 'age, education, background[,] or previous mental history in every instance where an accused expresses a desire to represent himself.'" *Williams*, 252 S.W.3d at 356 (quoting *Goffney v. State*, 843 S.W.2d 583, 584–85 (Tex. Crim. App. 1992)).

While a trial court does not have a duty to inquire into the defendant's capabilities, it must advise a pro se defendant "that there are technical rules of evidence and procedure, and he will not be granted any special consideration solely

7

because he asserted his pro se rights." *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988). In *Johnson*, the trial court informed the accused of the range of punishment and told him that there were "certain rights" that "a non-lawyer would be unable to accomplish." *Id.* The court inquired into whether the defendant "felt competent to conduct cross[-]examination of the witnesses." *Id.* On the day of trial, the defendant reaffirmed his desire to represent himself. *Id.* When it concluded that this was sufficient, the Court of Criminal Appeals reasoned that the accused had a day before trial would begin to consult additional counsel if he desired and that the trial court underscored the risks of self-representation by appointing standby counsel. *Id.*

Here, the record shows that the trial court admonished Beason of the dangers of self-representation more than a month before trial began. Beason informed the trial court that he was a citizen of the United States, could read and write English, had an associate's degree, and was unaware of any mental problems. Beason also told the trial court that he believed that he was "the sole person able to effectively cross-examine any witnesses against [him]." When the trial court asked whether Beason had anything else on the issue of self-representation, Beason admitted that he was unsure of what he could say "because I'm not really familiar with courtroom etiquette." The trial court said, "[T]hat's, of course, part of the problem." The judge discussed the fact that he could not help Beason, that Beason would be on his own, and that Beason would "be at a disadvantage." The trial court then read into the record the written admonishments and written waiver of counsel, and Beason acknowledged on the record that he understood and waived his right to counsel. Additionally, the trial court reinforced the dangers of self-representation when it appointed standby counsel. *See Johnson*, 760 S.W.2d at 279. On the day of trial, more than one month later, the trial judge again

8

admonished Beason about the dangers of representing himself and gave Beason procedural instructions for objecting and questioning witnesses.

Viewing the record in its entirety, we conclude that Beason was sufficiently made aware of the dangers and disadvantages of self-representation. Accordingly, Beason waived any complaint about the quality of his defense when he elected to represent himself at trial after being fully admonished by the court about the dangers of self-representation. *See Faretta*, 422 U.S. at 834 n.46; *Martin*, 630 S.W.2d at 956–57; *Williams v. State*, 549 S.W.2d 183, 189 (Tex. Crim. App. 1977). Moreover, a defendant's performance at trial does not render involuntary his waiver of the right to counsel. *See Godinez*, 509 U.S. at 400 ("[A] criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation."). Beason's third issue in each appeal is overruled.

We affirm the judgments of the trial court.


MIKE WILLSON
JUSTICE


August 30, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

9